IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOANNE E. MINNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 09-653-SLR | |
| | ) | |
| MICHAEL ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

G Wesley D. Quinton, Esquire of Duane Morris LLP, Wilmington, Delaware.  Counsel for Plaintiff.  Of Counsel:  Jaanine LaPlace, Esquire of Law Offices - Harry J. Binder and Charles E. Binder, P.C., New York, New York.

David C. Weiss, Esquire, United States Attorney, District of Delaware, and Dina White Griffin, Esquire, Special Assistant United States Attorney, District of Delaware.  Counsel for Defendant.  Of Counsel:  Eric P. Kressman, Esquire, Regional Chief Counsel, of the Office of General Counsel, Philadelphia, Pennsylvania.

---

**MEMORANDUM OPINION**

Dated:  September 29, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Joanne E. Minner ("plaintiff") appeals from a decision of Michael J. Astrue, the Commissioner of Social Security ("defendant"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff has filed a motion for summary judgment asking the court to award her DIB or, alternatively, remand the case for a new hearing. (D.I. 15) Defendant has filed a cross-motion for summary judgment, requesting the court to affirm his decision and enter judgment in his favor. (D.I. 18) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for DIB on April 2, 2007, alleging disability since July 31, 1993, due to anxiety and depression. (D.I. 7 at 57-58) Plaintiff was 47 years old on the alleged onset date of her disability and 52 years old on her date last insured. (*Id.* at 16, 342) Her initial application was denied on July 25, 2006. (*Id.* at 45) Plaintiff requested reconsideration, and her request was denied on June 22, 2007. (*Id.* at 44, 40-32)

---

[1]Under § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

42 U.S.C. § 405(g).

Thereafter, plaintiff requested a hearing, which took place before an administrative law judge ("ALJ") on April 24, 2008. After receiving testimony from plaintiff and a vocational expert ("VE"), the ALJ decided on June 9, 2008, that plaintiff was not disabled during the relevant time frame and within the meaning of the Social Security Act, specifically, that plaintiff could have performed other work existing in the national economy. (Id. at 24-25) Plaintiff sought review by the Appeals Council, and her request for review was denied on July 11, 2009. (Id. at 313-319, 5-8) On September 1, 2009, plaintiff brought the current action for review of the final decision denying plaintiff's application for DIB. (D.I. 1)

## B. Plaintiff's Non-Medical History

Plaintiff is currently 64 years old. She has a high school education, and some college level classes in nursing. (D.I. 7 at 341, 347) Plaintiff attended nursing school over a seven year period, but did not complete the requirements to earn a degree. (Id. at 338) Plaintiff has past relevant work experience as a receptionist. (Id. at 75) Plaintiff has not engaged in substantial gainful activity since July 31, 1993, the alleged date of her disability onset. (Id. at 16)

## C. Medical Evidence

### 1. Mental health impairments

#### a. Treatment with Patricia A. Sharp, Licensed Social Worker

Plaintiff's relevant medical history pertains primarily to treatment for anxiety and depression. Plaintiff treated with Patricia A. Sharp, a licensed social worker, on a weekly basis from August 1992 until early 1994, at various times throughout 1997, and

2

again from February 1998 through June 2000. (Id. at 194-195) During this time period, plaintiff suffered from major depression and anxiety accompanied by symptoms of insomnia, fatigue, and decreased ability to concentrate and make decisions. (Id. at 217, 193) In March 1993, Ms. Sharp recommended to plaintiff's then employer that she take a three month medical leave of absence "to more effectively recuperate from the debilitating effects of this depression." (Id.)

In September 2005, Ms. Sharp summarized plaintiff's condition during her years of treatment with her. According to Ms. Sharp, plaintiff had a GAF score of 55, which is indicative of moderate symptoms.[2] In addition to her mental health problems, plaintiff also suffered from complete right ear deafness and paralysis of the right side of her face due to surgery for acoustic neuroma. With medications and therapy, plaintiff experienced some improvement in her mental health condition; however, the improvements were temporary. Ms. Sharp described plaintiff as cycling into worsening states of depression, during which times her medications became ineffective or caused intolerable side effects. (Id. at 194) Ms. Sharp also documented several times during which plaintiff did not attend therapy due to her financial position, and/or because she was struggling so significantly with depression. (Id. at 194-195) Ms. Sharp opined that "[d]uring these time periods [of treatment] Ms. Minner suffered from severe, debilitating depression and anxiety. In my judgment, she was not well enough to work in any capacity." (Id. at 193) Ms. Sharp further noted that plaintiff required intense support to

_____

[2]A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Health Disorders ( "DSM-IV" ) 32 (4th ed. 1994).

3

deal with her emotional issues and required "deep rest, psychotherapy, antidepressant therapy and medical treatment." (*Id.*) Ms. Sharp questioned the efficacy of medical treatment for plaintiff and determined that her prognosis for remission of depression and anxiety was poor. (*Id.* at 196)

### b. Treatment with Joseph Bryer, M.D., Psychiatrist

In 1998, Ms. Sharp referred plaintiff to Joseph Bryer, M.D., a psychiatrist. (*Id.* at 171-172) Plaintiff told Dr. Bryer that, in the past, she had taken antidepressants like Zoloft, Amitriptyline and Paxil with a good response, except for minor side effects such as dry mouth. (*Id.* at 172). However, plaintiff indicated that she lost faith in her treating physician, Dr. Denver, and had not taken antidepressants since October 1997. (*Id.* at 172) She reported increased mood instability, tearfulness, difficulty getting out of bed, extremely low energy and motivation, poor concentration, pessimism, and passive suicidal thoughts. (*Id.*) Plaintiff indicated her desire to resume taking an antidepressant.

Upon examination, Dr. Bryer noted that plaintiff suffered from right facial paralysis, mildly low mood, mild construction of emotional range, and decreased vital sense and self-attitude. (*Id.* at 173) Dr. Bryer initially prescribed 20 mg of Prozac per day and later modified plaintiff's medications and dosages. In subsequent progress notes, Dr. Bryer noted a general improvement in plaintiff's mood and overall sense of health, although plaintiff reported that these periods of improvement were short-lived. (*Id.* at 175) During her last treatment session with Dr. Bryer on October 1, 1998, plaintiff reported that she still felt moderately low in mood and energy, but stated that

4

she was able to concentrate more fully. Dr. Bryer noted that plaintiff was talkative, had full range of emotional expression, and did not appear depressed. (Id. at 174) Plaintiff made subsequent phone calls to Dr. Bryer indicating that she felt increased anxiety and a lowering of her mood and energy levels. Dr. Bryer responded by making additional adjustments in her medication regimen. (Id.)

In a letter dated September 2, 2005, Dr. Bryer reported that plaintiff was under his care from March 16, 1998 through November 19, 2001, for major depression. (Id. at 170) Summarizing her condition during this time, Dr. Bryer stated, "Except for brief periods of limited improvement, her depressive symptoms were severe and prevented her from working. Multiple treatment approaches were utilized over the time I treated her." (Id.) Dr. Bryer noted that plaintiff discontinued treatment with him due to loss of insurance coverage and inability to pay. He referred plaintiff to Northeast Community Mental Health Center. (Id.)

### c. Treatment at the Hockessin Center

Plaintiff's medical records also include treatment at the Hockessin Center for several physical ailments noted supra. Physicians at these centers noted plaintiff's depression and anxiety and its accompanying symptoms, such as fatigue, difficulty sleeping, panic attacks, and poor concentration. They also treated plaintiff with a variety of medications. In 2004, Suzanne Carr, M.D., a treating physician at the Hockessin Center, gave testimony at a deposition for the Family Court of the State of Delaware in connection with plaintiff's divorce proceedings. Dr. Carr opined that, based upon her treatment of plaintiff, plaintiff appeared close to being homebound and that

5

returning to work would exacerbate her depression. (*Id.* at 114)

Another Hockessin Center physician, Dana Newswanger, D.O., completed a Psychiatric/Psychological Impairment Questionnaire for plaintiff on January 17, 2007. Dr. Newswanger diagnosed plaintiff with major depression, anxiety/panic disorder, dependent personality, poor insight, hypertension, gastroesophageal reflux disease ("GERD"), acoustic neuroma causing facial paralysis, problems with primary support group, and financial issues. Dr. Newswanger assessed plaintiff a GAF score of 55 and opined that plaintiff's prognosis for improvement was "poor" noting that plaintiff made "no improvement despite multiple medications and psychiatric evaluation." (*Id.* at 230-237) In support of this diagnosis, Dr. Newswanger identified the following clinical findings: poor memory, sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks occurring two to three times per night, anhedonia or pervasive loss of interest, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, generalized persistent anxiety, and feeling overwhelmed easily. (*Id.* at 231) Dr. Newswanger opined that plaintiff was markedly limited (defined as effectively precluded) in her ability to remember locations and work-like procedures; to understand, remember and carry out detailed instructions; to maintain attention and concentration; to maintain a regular attendance schedule; to work in coordination with or in close proximity to others; to make simple work-related decisions; to complete a normal work week without interruptions from psychologically based symptoms; to accept instruction and respond to criticism from supervisors; to respond appropriately to changes in the work setting; to travel to unfamiliar places; and to set realistic goals and make plans independently. (*Id.* at 233-235) Dr. Newswanger

6

also noted that plaintiff was moderately limited (defined as significantly limited but not totally precluded) in her ability to understand, remember and carry out simple one or two step instructions and to interact with the public. (*Id.* at 233-234)

Dr. Newswanger further noted that plaintiff experienced episodes of deterioration and decompensation in work or work-like settings evidenced by her desire not to talk to people and her withdrawal from uncomfortable situations. Based on this assessment, Dr. Newswanger opined that plaintiff could not work in even a low stress environment and would be absent from work on the average of more than three times per month. (*Id.* at 236-237) According to Dr. Newswanger, plaintiff's symptoms and limitations had been present since 1990.

### d. State Agency Physician Opinion

On January 30, 2002, a state agency physician, Phyllis Smoyer, M.D., reviewed plaintiff's medical records and completed a Residual Functional Capacity (Mental) Form and a Psychiatric Review Technique Form. (*Id.* at 151-169) Dr. Smoyer opined that during the relevant period for benefits (from July 31, 1993, her alleged onset of disability date, through December 31, 1998, her date last insured), plaintiff was moderately limited in her ability to remember locations and work-like procedures; to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods of time; to complete a normal workday and work-week without interruptions from psychologically based symptoms; to perform work at a consistent pace; to respond to changes in the work setting; and to set realistic goals or make plans independently. (*Id.*) In all other areas of assessment, Dr. Smoyer found no

7

evidence supporting a limitation. (*Id.*)  Based on this functional capacity assessment, Dr. Smoyer opined that plaintiff could perform at least low stress, low demand work. (*Id.* at 169)

### 2. Physical impairments

Plaintiff's primary physical ailments include hypertension, hyperlipidemia, kidney stones, low back pain, numbness in her hands, neck strain, palpitations, tachycardia secondary to stress, facial swelling due to either dermatitis or a drug reaction, GERD, irritable bowel syndrome, dizziness, and acoustic neuroma resulting in permanent facial paralysis. (*Id.* at 128-140, 263-268, 250-252, 197)  At least some of these physical impairments have been linked to plaintiff's anxiety and depression, and/or the medications used to treat those conditions.  Dr. Carr and Dr. Newswanger are the physicians listed in the record who have treated plaintiff for these conditions and provided related evidence concerning them.

### D. Hearing Before the ALJ

#### 1. Plaintiff's testimony

Plaintiff is divorced, lives alone, and has no children. (*Id.* at 328, 335)  She is 5' 6" tall and weighs 120 pounds. (*Id.* at 340-341)  Plaintiff testified that in 1993, she suffered from a non-malignant brain tumor, which was removed, but has since reoccurred. (*Id.* at 329-330 349 352-353)  Since the removal of the tumor, plaintiff experiences dizziness, a loss of hearing, and a lack of feeling in her face, throat, neck, and head. (*Id.* at 329-330)  Plaintiff testified that she had frequent panic attacks, extreme fatigue necessitating naps during the work-day, and crying episodes that

8

prevented her from functioning at work. (*Id.* at 331) As a result of these difficulties, plaintiff sought treatment with Ms. Sharp. (*Id.*) Despite counseling and treatment with over 20 different types of medications, plaintiff testified that she continues to experience sleeplessness, anxiety, and depression. (*Id.* at 347-348, 332-33) She awakens early, after sleeping for only four hours, but cannot get out of bed. (*Id.* at 333) According to plaintiff, she only gets out of bed two days in every seven days, because her depression causes extensive fatigue and low energy. (*Id.* at 333-334) Plaintiff testified that she procrastinates in all tasks, including delaying treatment for kidney stones and canceling routine appointments, because she has no motivation. (*Id.* at 334, 344) Plaintiff attended nursing school for seven years, taking classes two days per week for an hour and a half each day. (*Id.* at 332, 346) Plaintiff testified that she frequently missed classes due to depression and never completed her degree due to a lack of funds. (*Id.* at 338, 340-341, 346-347) Plaintiff does almost no chores at home, eating microwave food, cereal, or sandwiches. (*Id.* at 337) Plaintiff does not get along with her family and has little interaction with friends. (*Id.* at 335-336) Mental health professionals who treated plaintiff recommended hospitalization, but plaintiff declined, indicating that she did not want the hospitalization to affect her record, in the event that she ever completed nursing school. (*Id.* at 339, 350) Plaintiff also testified to problems with hypertension, GERD and irritable bowel syndrome. (*Id.* at 345-346) Most of plaintiff's physical ailments are controlled with medication, except for flare ups with irritable bowel syndrome. (*Id.*)

9

### 2. Vocational expert testimony

Following plaintiff's testimony, the ALJ posed several hypothetical questions to

the VE. Specifically, the ALJ asked the VE to consider a hypothetical person within the

following parameters:

> 47 years of age on her onset date which she puts at 7/31/93, 12th grade
> education, plus a year of college mostly in the nursing field. . . . Suffering from
> various ailments during the period in question mostly related to depression. She
> had some coronary heart disease that seemed [sic] to have cleared up.
> Hypertension, controlled by her medications . . . . Gastroesophageal reflux
> disease and all of these things then caused her to have moderate depression
> with occasional panic attacks all some, somewhat relieved by her medication.
> She indicated she's had 20 different kinds of medication due [to] side effects. . . .
> . Simple, routine, unskilled, low stress, low concentration, low memory, is able to
> attend tasks and to complete schedules during the period in question. And
> would be moderately, moderately limited as to push -- as to her ability to
> maintain and perform her AD, ADL's, interact socially, and to maintain
> concentration, persistence, and pace due to her pain and depression. And if I
> find she was able to lift 10 pounds frequently, 20 on occasion. Could stand for
> an hour, sit for an hour consistently on and off basis during an eight hour day.
> But would have to avoid heights and hazardous machinery due to the fact that
> she has some imbalance due to a brain tumor. . . . But would be able to do light
> work activities during that period in question.

(*Id.* at 354) Based on this hypothetical, the VE testified that plaintiff could perform the

following light duty occupations: garment sorter with 2,000 positions locally and 1.4

million positions nationally, fruit cutter with 250 jobs locally and 475,000 positions

nationally, and recreational aide with 400 positions locally and 325,000 positions

nationally. (*Id.* at 355-356) In addition, the VE identified work at the sedentary level as

a nut sorter with 300 jobs locally and 600,000 nationally. (*Id.* at 355)

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are

conclusive, if they are supported by substantial evidence. Accordingly, judicial review of

the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986) (internal citations omitted). Thus, in the context of judicial review under

11

§ 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *See Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

### A. Regulatory Framework

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." *See* 20 C.F.R. §§ 404.1505. The claimant bears the initial burden of proving disability. *See* 20 C.F.R. §§ 404.1512(a); *Podeworthy v. Harris*, 745 F.2d 210, 217 (3d Cir.1984). To qualify for disability insurance benefits, the claimant must establish that he was disabled prior to

12

the date he was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(I) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any gainful work.[3] *See* 20 C.F.R. § 404.1520(a)(4)(iii); Plummer, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing,

---

[3]Additionally, at steps two and three, claimant's impairments must meet the duration requirement of twelve months. *See* 20 C.F.R. § 404.1520(a)(4)(ii-iii).

the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(d).[4]

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv) (stating a claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating that a claimant is not disabled if the claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC.]" *Id.* This determination requires the Commissioner to consider the cumulative effect of the claimant's impairments and a vocational expert is often consulted. *Id.*

---

[4]Prior to step four, the Commissioner must assess the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)).

## B. The ALJ's Decision

The ALJ considered the medical evidence of record and testimony received at the hearing, and concluded that plaintiff retains the capacity for work and is not disabled as defined by the Social Security Act. The ALJ made the following enumerated findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 1998.

2. The claimant has not engaged in substantial gainful activity since July 31, 1993, the amended alleged onset date (20 C.F.R. §§ 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairments:  Depression and Anxiety (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that during the period under consideration, the claimant had the [RFC] to perform light work as that term is defined in 20 C.F.R. § 404.1567(a) except that she had to avoid work at heights or with hazardous machinery due to occasional anxiety-induced dizziness.  In addition, because the claimant's depression and anxiety resulted in moderately impaired attention, concentration and persistence, she was psychologically limited to unskilled work.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565).

7. The claimant was born on February 5, 1946 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 1993 through her date last insured, December 31, 1998 (20 C.F.R. §§ 404.1520(g)).

## C. Analysis

Plaintiff argues that the ALJ's determination was not based upon substantial evidence. Specifically, plaintiff contends that: (1) the ALJ failed to properly weigh the opinions of plaintiff's treating mental health counselor, her psychiatrist, and her physicians, and improperly accepted the opinion of a non-examining state agency physician; (2) the ALJ failed to properly evaluate plaintiff's credibility; and (3) the ALJ erred in relying upon VE testimony that was based on a hypothetical derived from the opinions of the non-examining state agency physician.

After reviewing the decision of the ALJ in light of the relevant standard of review and the applicable legal principles, the court cannot conclude that the ALJ's decision is supported by substantial evidence. In determining the weight to afford to the opinion of a treating source, the ALJ must weigh all evidence and resolve any material conflicts.[5]

---

[5]The court notes that the ALJ's review and determination of weight for a treating physician's opinion is not unlimited. "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (citing Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983)).

*See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Fargnoli*, 247 F.3d at 43

(recognizing that the ALJ may weigh the credibility of the evidence). The regulations

generally provide that more weight is given to treating source opinions; however, this

enhanced weight is not automatic. *See* 20 C.F.R. § 404.1527(d)(2). Treating source

opinions are entitled to greater weight when they are supported by medically acceptable

clinical and laboratory diagnostic techniques and are not inconsistent with "other

substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see Fargnoli*, 247 F.3d

at 43. "Although a treating physician's opinion is entitled to great weight, a treating

physician's statement that a plaintiff is unable to work or is disabled is not dispositive."

*Perry v. Astrue*, 515 F. Supp.2d 453, 462 (D. Del. 2007). The ALJ may discount the

opinions of treating physicians if they are not supported by the medical evidence,

provided that the ALJ adequately explains his or her reasons for rejecting the opinions.

*See Fargnoli*, 247 F.3d at 42. When a treating physician's opinion conflicts with a non-

treating physician's opinion, the Commissioner, with good reason, may choose which

opinion to credit. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

    If a treating opinion is deemed not controlling, the ALJ uses six enumerated

factors to determine its appropriate weight. *See* 20 C.F.R. § 404.1527(d) (2-6). The

factors are: (1) length of the treatment relationship; (2) nature and extent of the

treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6)

other factors. *See id.* The supportability factor provides that "[t]he better an

explanation a source provides for an opinion, the more weight [the ALJ] will give that

opinion." 20 C.F.R. § 404.1527(d)(3). Similarly, the consistency factor states that the

"more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(d)(4).

In this case, the ALJ considered the opinions of plaintiff's treating psychiatrist and therapist and concluded that they were entitled to little weight. While it is true that the opinions of a therapist are not entitled to controlling weight, those opinions are still considered "important and should be evaluated on key issues such as impairment severity and functional effects" in accordance with the factors set forth in 20 C.F.R. § 404.1527(d). *See* Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939 at *1, 3 (S.S.A. 2006); 20 C.F.R. § 404.1513(d). In rejecting the opinion of Ms. Sharp, plaintiff's treating therapist, the ALJ noted that Ms. Sharp had provided a "file summary" instead of treatment records from each individual session. He further stated:

> Ms. Sharp wrote that the claimant did attend nursing classes during this time but dropped out, not because of "debilitating depression" brought on by the unresolved family issues which she discusses in her summary, but because of the claimant's "disabling anxiety during exam time." (Exhibit 10F). The undersigned finds that Ms. Sharp has discounted the claimant's work-related psychological abilities to a degree not supported by the evidence, and therefore, accords her opinion little weight in determining the claimant's psychological residual functional capacity.

(D.I. 7 at 21)

In the court's view, the ALJ's cursory analysis of Ms. Sharp's opinion does not comport with the regulations. The ALJ highlights only one aspect of plaintiff's severe anxiety and depression discussed by Ms. Sharp and essentially ignores the remainder of Ms. Sharp's notes and opinions. According to Ms. Sharp, plaintiff suffered with continuing anxiety and depression that never went into full remission and, at times, "cycled into worsening states" depending on, among other things, the pyschosocial

18

stressors in her life. (*Id.* at 194-196) Plaintiff's depression was so severe at times that she "remained in bed for days at a time" and "dropped out" of therapy on numerous occasions. (*Id.* at 195) The ALJ discounted Ms. Sharp's opinion, finding it unsupported by the weight of the evidence, but does not identify what evidence contradicts and/or conflicts with Ms. Sharp's opinions.

Similarly, the ALJ discounted Dr. Bryer's opinion regarding the extent of plaintiff's limitations, finding them to be inconsistent "with the preponderance of remaining evidence" and unsupported "either by the evidence or by his own treatment notes." (*Id.* at 22) Again, however, the ALJ does not identify what evidence he relies upon to contradict Dr. Bryer's reports, except for the "snippets" of Dr. Bryer's progress notes which are taken out of context. The totality of Dr. Bryer's treatment notes are consistent with the opinion and summary provided by Ms. Sharp and paint an overall picture of a person who suffers from continuing cycles of anxiety and depression with sporadic but not lasting relief. As the Third Circuit recognized, even a doctor's observation that a patient is stable on medication does not necessarily support the medical conclusion that a patient can return to work. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008). In this case, Dr. Bryer's treatment notes and Ms. Sharp's summary reveal no such stability for plaintiff, even with the benefits of numerous medications. Instead, plaintiff consistently had severe symptoms of anxiety and depression including, among other things, sleeplessness and difficulty concentrating. Moreover, plaintiff reported only limited and fleeting relief throughout her course of treatment. The ALJ ignored this evidence and its impact on plaintiff's psychological RFC and, instead, chose to credit the opinion of a non-examining

19

physician, without adequate rationale for the decision and without fully complying with the regulation's requirements for weighing medical source opinions. Moreover, the opinion of Dr. Smoyer, the non-examining state agency physician whom the ALJ credited, is itself incomplete, insofar as it spans only a year of plaintiff's treatment and did not take into account all the evidence from plaintiff's treating medical sources. Because this flawed opinion formed the basis for the ALJ's RFC assessment and, in turn, informed the hypothetical question posed by the ALJ to the vocational expert, the court cannot conclude that the ALJ's decision was supported by substantial evidence.

In sum, the court concludes that the ALJ did not give complete consideration to the totality of the treatment records and information provided by plaintiff's treating medical sources and did not fully consider the factors provided in 20 C.F.R. § 1527(d) for determining the weight to be afforded medical source opinions. The court further concludes that, without additional explanation for his decision, it was error for the ALJ to rely exclusively on the opinion of a non-examining, non-treating state agency physician, whose review of the record was less than complete. Accordingly, the court concludes that the ALJ's decision was not supported by substantial evidence and, therefore, the court will reverse the decision of the ALJ and remand this matter to the ALJ for further findings and/or proceedings.

## V. CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment will be granted to the extent that the case is remanded for further findings and/or proceedings consistent with this memorandum opinion. Defendant's motion for summary judgment is denied.

An appropriate order shall issue.

20